416 A.2d 1049

**COMMONWEALTH of Pennsylvania**

v.

**Timothy D. CAIN, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1979.

Filed Dec. 14, 1979.

Reargument Denied Feb. 15, 1980.

Mitchell Lipschutz, Philadelphia, for appellant.

Steven J. Cooperstein, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

CAVANAUGH, Judge:

The appellant was convicted of aggravated assault, criminal conspiracy, possession of an instrument of crime and robbery after a four day trial before GUARINO, J. and a jury. His motions for new trial and arrest of judgment were denied and he appeals from the judgment of sentence.

Reviewing the evidence in the light most favorable to the Commonwealth, the following are the facts. On Saturday, July 30, 1977, appellant who was nineteen years old at the time, came into a small grocery store owned and operated by Gomito Gomez of Philadelphia, Pennsylvania. The storekeeper was not sure of the time although he believed it to be around 5 o'clock p. m. Appellant ostensibly wanted to buy potato chips and a soft drink. Shortly thereafter, a second man entered the store. When Mr. Gomez opened the cash register to complete the transaction with appellant, the

second man pulled a gun and announced a holdup. Gomez was forced to lie on the floor and appellant stood over him with his foot on his head. The other man then removed cash from the cash register. Appellant did not display a gun. The armed man took Gomez's key and locked the front door of the store, and also threatened to kill Gomez if he kept looking up.

Appellant subsequently grabbed Gomez around the neck and both assailants took him to the second floor where he maintained a small office and living quarters. Gomez was again forced to lie on the floor while appellant placed his foot on his head. The man with the gun forced open a drawer and removed cash and a watch. Gomez was then pushed into a closet and was told he would be shot if he left. He heard the two men walking around and remained in the closet about twenty minutes until it was quiet. He then left the closet and called the police who responded shortly thereafter.

About $150.00 and a watch were taken from Gomez during the incident.

Gomez did not again see appellant (whose identity he did not know at the time of the crime) until September 7, 1977, when he went to a Gino's restaurant located about five or six blocks from his grocery store. On entering the restaurant he observed appellant working there and recognized him as his assailant. As soon as Gomez left Gino's he went to the police station and told the police that he had located one of the men involved in the crime at his store. The police accompanied Gomez to Gino's and appellant was arrested.

At trial appellant denied having anything to do with the crime and introduced his time card from Gino's (where he was employed on the date of the crime) indicating that he punched into Gino's at 4:59 p. m. on July 30, 1977, and clocked out at 1:24 a. m., July 31. Appellant testified that he never left the store from the time he punched in until he was finished for the evening.

The assistant manager of Gino's on July 30 and 31, 1977, testified he was on duty during the entire period of time

that appellant worked on July 30 and 31, 1977, and that appellant did not leave the restaurant from the time he punched in until he left the following morning.

The manager of Gino's where appellant worked also testified that appellant was in the restaurant from the time he punched in at 4:59 p. m. until the manager left at about 6:00 p. m.

■ Appellant first contends that the court below erred in its charge to the jury concerning his alibi. In its charge the court stated:

"The defendant's alibi evidence that he was not present at the scene of the crime may in and of itself work an acquittal, or it, together with other evidence, may be sufficient to raise a reasonable doubt in the mind of the jury . . ." (4.21).

. . . . .

"The law is clear that if the jury finds the testimony of Mr. Gomez is believable and also believes that his testimony as to the identification of his assailant was positive and unqualified, and based on opportunity to observe, identification testimony may be sufficient for conviction, although there were three or even four other witnesses who gave testimony that tended to show the defendant was at another place at the time the crime was committed. You must consider the alibi defense and reputation testimony in conjunction with all of the evidence in this case" (4.21–4.22).

Concerning identity the court charged: "One of the issues is the identity of the person who committed the crime; and, like any other element in a case, it must be proven by the Commonwealth beyond a reasonable doubt". (4.22).

. . . . .

"On the other hand, if you find that the witness was not positive as to the identification of his assailant, or his positive statements were qualified or weakened by cross-examination or by any other qualifications, or by his failure to identify the defendant on other occasions, then

the accuracy of the identification is doubtful, and you should take it with caution and circumspection.

"Remember that even though the defendant has presented alibi defense, if you find that Mr. Gomez positively identified his assailant, and it was unqualified, then he's not merely to go off scot free merely because he has presented an alibi defense." (4.24).

Appellant contends that the charge to the jury was improper and confusing concerning alibi and relies on *Com. v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1958) and *Com. v. Van Wright*, 249 Pa.Super. 451, 378 A.2d 382 (1977) to sustain his position.

In *Commonwealth v. Bonomo, supra*, the Supreme Court established the rule to be followed when a defendant introduces evidence of alibi.

"It [alibi evidence] may, either standing alone or together with other evidence, be sufficient to leave in the minds of the jury a reasonable doubt which, without it, might not otherwise exist. It will be the duty of the trial judge to carefully instruct the jury as to the relationship of the evidence of the prosecution and the evidence of the defendant as each bears upon the essential elements of the crime charged." 396 Pa. 231, 232, 151 A.2d 441, 446.

We have read the charge of the lower court as a whole, as we are required to do, and find that it falls within the requirements of *Commonwealth v. Bonomo, supra.*

Appellant also relies on *Com. v. Van Wright*, 249 Pa.Super. 451, 378 A.2d 382 (1977). In that case the Court held that when evidence of an alibi is introduced a specific alibi instruction should be given which the lower court in the *Van Wright* case refused to do. We find that this case does not support appellant's contention.

█ It should be noted that even where the court errs in its charge by stating that the defendant "has the duty of proving the alibi to you by a fair preponderance of the evidence" a new trial is not required if the error is harmless beyond a reasonable doubt. *Com. v. Wortham*, 235 Pa.Super. 25, 33, 342 A.2d 759, 764 (1975).

■ Secondly, appellant contends that the trial court erred is not granting a mistrial subsequent to the following testimony:

By MR. SCHIFFMAN: (Prosecutor)

"Q. And who, if anyone, assisted you in this arrest?

"A. Policeman Rhoades and Detective Whittle.

"Q. All right. Now, where is Detective Whittle today?

"A. He's outside the court room at the present time.

MR. SCHIFFMAN: For the record, I make Detective Whittle available to counsel, should counsel wish to call him."

Counsel for appellant immediately objected to the statement. The objection was sustained and the court directed the remarks to be stricken from the record. Appellant then moved for a mistrial which was refused. The court did, however, caution the jury that remarks by counsel are not evidence and directed the jury not to consider the statement.

Appellant contends that the statement by the prosecutor that he would make a detective available to counsel if he wanted to call him, is analogous to a prosecution statement that failure to call a witness available to both sides may be used as negative evidence against a defendant. The analogy is not well drawn because the jury was not led to believe that failure of defendant to call the detective in this case in any way adversely reflected on the defendant.

Further, the error, if any, was harmless beyond a reasonable doubt and does not warrant a new trial. See *Com. v. Wortham, supra.*

■ Finally, appellant contends that the court erred by instructing the jury *inter alia,* that its function was to discover the truth and the facts in the case. Appellant argues that by using the word "truth" that the jury believed it had the duty to search beyond the courtroom in reaching its verdict. We find no merit in this argument. The court unequivocably stated: "And this is you primary function *to determine and discover from this record what is the truth and what are the facts."* (4.24, 4.25).

There is nothing in the charge that would lead the jury to believe that it was to go beyond the evidence submitted in the courtroom to reach its verdict.

Judgment of sentence affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I submit that the lower court's charge misled the jury into believing that appellant's alibi evidence was not to be given the same consideration as the Commonwealth's identification evidence.

The lower court's charge on the alibi and identification evidence was as follows:

The defendant has also submitted what we generally call in the law alibi testimony. An alibi is merely a name of the nature of the defense that the accused person was not at the place that the crime was committed, but was elsewhere when that crime was committed. Obviously a person cannot be found guilty of a crime charged unless he was present at the scene of the crime. The defendant has offered evidence that he was not present at the scene of the crime, but rather that he was at Gino's at work.

When you come to consider this evidence or this defense, you must consider, among other things, whether the testimony given by the alibi witnesses covered the entire time the offense is shown to have been committed, and whether it precludes the possibility of the defendant's presence at the scene of the crime. You should consider this evidence along with other evidence in the case in determining whether the Commonwealth has met its burden of proving the defendant guilty beyond a reasonable doubt.

The defendant's alibi evidence that he was not present at the scene of the crime may in and of itself work an acquittal, or it, together with other evidence, may be sufficient to raise a reasonable doubt in the mind of the jury. When you come to consider the alibi testimony, you

will not only consider it, the single testimony of each witness given, but you must also consider it in the context of the other evidence in this case and in context with the evidence given by the eyewitness or the victim of the crime, and in conjunction with what he says is the person he says is his assailant.

The law is clear that if the jury finds the testimony of Mr. Gomez is believable and also believes that his testimony as to the identification of his assailant was positive and unqualified, and based on opportunity to observe, identification testimony may be sufficient for conviction, although there were three or even four other witnesses who gave testimony that tended to show that the defendant was at another place at the time the crime was committed. You must consider the alibi defense and reputation testimony in conjunction with all of the evidence in this case.

One of the issues is the identity of the person who committed the crime; and, like any other element in a case, it must be proven by the Commonwealth beyond a reasonable doubt. The Commonwealth has presented as its only eyewitness in this case the alleged victim of the robbery, Mr. Gomito Gomez.

In assessing the value of his testimony, identifying his assailant, two things are to be considered by you: one, the general credibility of him as a witness, by applying to him the standards of which I have instructed you on, and upon which credibility depends; and, two, the prior identifications, then you may receive the witness's positive in-court identification as you would any other statement of fact in this case.

On the other hand, if you find that the witness was not positive as to the identification of his assailant, or his positive statements were qualified or weakened by cross-examination or by any other qualifications, or by his failure to identify the defendant on other occasions, then the accuracy of the identification is doubtful, and you should take it with caution and circumspection.

Remember that even though the defendant has presented alibi defense, if you find that Mr. Gomez positively

identified his assailant, and it was unqualified, then he's not merely to go off scot free merely because he has presented an alibi defense.

The first part of this charge (the first three paragraphs) told the jury how it should appraise appellant's alibi evidence. The second part of the charge (the next four paragraphs) told the jury how it should appraise the Commonwealth's identification evidence. So far, so good. Each of these parts was a correct statement of the law, and each was properly related to the other, for they were given equal emphasis, or importance. Thus, up to this point, the court properly confronted the jury with the tension at the heart of the case: on the one hand, a victim who was sure that while he was in his store, he had been robbed by appellant; on the other hand, disinterested, and documentary, evidence that at 4:59 p. m., appellant had been at Gino's. It was this tension that the jury somehow had to resolve. Perhaps they would resolve it by deciding that the victim, albeit certain in his mind, was mistaken; or by deciding that the victim was correct in identifying appellant but mistaken about the time of the robbery (if the jury found that the robbery occurred sufficiently before 5:00 p. m., it could accept the time card evidence that by 5:00 p. m. appellant was in Gino's); or in some other way.

Then, however, came the third part of the charge (the last paragraph). By giving the instructions contained in this part the court dissolved the tension at the heart of the case, and made the jury's problem easy. "Remember," said the court, "*even though* the defendant has presented alibi defense, *if you find* that Mr. Gomez positively identified his assailant . . . *then* he's not merely to go off scot free merely because he has presented an alibi defense." In other words: First look at the Commonwealth's identification evidence. If you believe it, you may put aside such doubts as you may have had because of the alibi evidence. For if a victim positively identifies his assailant, the defendant is not to go scot free "merely" because the defendant has offered an alibi.

This was error; and given the critical importance of the alibi evidence, it was not harmless error. The probative value of Mr. Gomez's testimony was not inherently superior to appellant's evidence. Whether it was superior or inferior depended on findings of credibility to be made by the jury upon consideration of all of the evidence—whether offered by the Commonwealth or appellant. Furthermore, upon such consideration, it was well within the jury's prerogative to find that although Mr. Gomez's testimony was believable, appellant's alibi evidence was also sufficiently believable to raise a reasonable doubt of his guilt. *See Commonwealth v. Van Wright,* 249 Pa.Super. 451, 378 A.2d 382 (1977). In such a situation, the jury would have been required to find appellant not guilty. *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A.2d 441 (1959); *Commonwealth v. Walley,* 262 Pa.Super. 496, 396 A.2d 1280 (1978); *Commonwealth v. Van Wright, supra; Commonwealth v. Mawson,* 247 Pa.Super. 88, 371 A.2d 1340 (1977). The jury could not escape this requirement by saying, "Even so, we had better find appellant guilty, because the judge told us that 'he's not merely to go off scot free merely because he has presented an alibi defense.' "

The judgment of sentence should be vacated and the case remanded for a new trial.